C. A. Hunt Engineering Company, Inc. v. Commissioner.C. A. Hunt Engineering Co. v. CommissionerDocket No. 57469.United States Tax CourtT.C. Memo 1956-248; 1956 Tax Ct. Memo LEXIS 47; 15 T.C.M. (CCH) 1269; T.C.M. (RIA) 56248; November 9, 1956*47 The taxpayer corporation was engaged in building projects under long-term construction contracts. It maintained no inventories and did not own any heavy equipment. Its books were kept and its income tax returns were filed under a cash receipts and disbursements method of accounting. During the first two years of the taxpayer's existence it was primarily engaged in the construction of three apartments and a shopping area for related companies. A portion of the construction price of these projects was paid over a five-year period subsequent to their completion. The Commissioner disallowed certain specified items claimed as deductions for entertainment and travel expense. He also computed the taxpayer's income by using an accrual method of accounting and determined deficiencies accordingly. Held: 1. The cash receipts and disbursements method of accounting clearly reflected the income of the taxpayer for the taxable period. 2. The taxpayer has not carried its burden of proving error in the Commissioner's determination disallowing the items of travel and entertainment. Martin M. Lore, Esq., 107 William Street, New York, N. Y., for the petitioner. William F. Fallon, Esq., for the respondent. TIETJENSMemorandum Findings of Fact and Opinion The Commissioner determined a deficiency in income tax for the taxable year ended June 30, 1949, in the amount of $88,621.72. The petitioner does not contest some of the adjustments. There are two issues for decision: (1) whether it was proper for the Commissioner to disallow a deduction of $8,564 for travel and entertainment expenses; and (2) whether the cash receipts and disbursements method of accounting which the petitioner used did not clearly reflect income, thereby warranting the Commissioner's recomputation on an accrual method. Findings of Fact The petitioner is a corporation incorporated in New Jersey with its principal offices at Bergenfield, New Jersey. The petitioner was equally owned by two stockholders, C. A. Hunt and*49 Lillian F. Morrissey. Its income tax return for the year involved was filed with the collector of internal revenue for the fifth district of New Jersey. The petitioner was incorporated in 1948 to succeed to the business of a sole proprietorship theretofore operated by C. A. Hunt. It engaged in the construction business, doing what is termed a one-package operation. It would help a customer choose a building site, then prepare complete plans for a building, and build it. When necessary it assisted in obtaining mortgage financing. The usual construction job took time in excess of one year to complete. In connection with the petitioner's operations, C. A. Hunt and Lillian Morrissey traveled and entertained people connected with the companies for which buildings were being erected or proposed to be erected. Similarly they entertained industrial layout engineers who prepared plans for the proposed buildings. The petitioner kept its books and filed its income tax returns under a cash receipts and disbursements method of accounting. Hunt had been in the construction business for 15 years as a sole proprietor and had kept books and filed income tax returns under that method of accounting. *50 During the fiscal year ended June 30, 1949, the petitioner was engaged in five construction jobs. Three of these were apartments, Morrissey Hunt Sections A, B, and C, the fourth was Bergenfield Plaza, a shopping area for the apartments, and the fifth was a building for the A. O. Smith Corporation. Morrissey Hunt Sections A, B, C, and Bergenfield Plaza were owned by companies in which C. A. Hunt and Lillian Morrissey each held 40 per cent of the stock and the Foster family held 20 per cent of the stock. Morrissey Hunt Section A was completed during the fiscal year ended June 30, 1949. Morrissey Hunt Sections B and C, and Bergenfield Plaza were completed during the fiscal year ended June 30, 1950. The building of apartment houses by the petitioner was a type of construction different than that previously engaged in by Hunt, who had constructed industrial projects only. The petitioner's books showed the price, cost, profit, year costs paid and year construction prices received for Morrissey Hunt Sections A, B, C, and Bergenfield Plaza, to be as follows: Morrissey HuntMorrissey HuntMorrissey HuntBergenfieldSection ASection BSection CPlazaConstruction Price$1,871,791.46$1,878,494.18$1,312,387.37$371,584.32Less: Materials$1,302,752.98$1,260,220.03$ 946,147.36$341,817.90Labor346,273.71331,338.78227,012.7882,322.51Field Expenses8,550.2713,844.0617,538.844,769.33Total Cost$1,657,576.96$1,605,402.87$1,190,698.98$428,909.74Profit$ 214,214.50$ 273,091.31$ 121,688.39($ 57,325.42)Year Costs Paid6-30-49$1,647,266.04$1,243,688.37$ 467,913.53$271,292.236-30-506,996.46341,608.60664,744.85125,666.126-30-513,314.4620,105.9047,772.8531,951.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,267.75Total (as above)$1,657,576.96$1,605,402.87$1,190,698.98$428,909.74Year Construction PricesReceived6-30-49$1,763,915.00$1,208,500.00$ 664,000.00$120,124.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,210.00621,250.00611,100.00153,660.006-30-51346.211,193.1797,800.326-30-522,397.345,000.005,000.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,549.135,074.459,016.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,373.7838,669.7322,078.17Total (as above)$1,871,791.46$1,878,494.18$1,312,387.37$371,584.32*51 The petitioner maintained no inventories. It purchased materials for a given job as they were needed. The petitioner did not own any bulldozers or other heavy equipment. It rented these when they were needed. Computations based on the petitioner's books and records would show net income or net loss for the years ended June 30, 1949 through June 30, 1953, using the cash receipts and disbursements method of accounting and the completed contract method of accounting, to be as follows: Cash ReceiptsCompletedand Disburse-ContractYearments MethodMethod6-30-49[24,125.56)$ 79,537.896-30-50189,362.49224,044.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,176.03(180,181.37)6-30-521,837.1915,880.106-30-53(126,051.24)(59,339.90)The Commissioner recomputed the petitioner's gross profit on contracts for the years ended June 30, 1949 and 1950, as follows: Gross receipts reported: Fiscal year ended 6/30/49$3,933,916.30Fiscal year ended 6/30/501,501,831.00Plus accounts receivable as of6/30/50: Morrissey Hunt Corp., Section A43,744.52Morrissey Hunt Corp., Section B48,744.18Morrissey Hunt Corp., Section C36,094.20Bergenfield Plaza, Inc.59,025.00Revised gross receipts - Total$5,623,355.20Cost of construction: Fiscal year ended 6/30/49 - re-ported$3,795,561.02Fiscal year ended 6/30/501,207,110.09Plus accounts payable 6/30/5074,560.32Revised cost of construction$5,077,231.43Total gross profit on contracts re-vised$ 546,123.77Revised gross profit applicable tothe fiscal year ended 6/30/49($3,933,916.30/$5,623,355.20 X$546,123.77)$ 382,050.42Gross profit per return138,355.28Understatement$ 243,695.14Revised gross profit applicable tothe fiscal year ended 6/30/50($1,501,831.00/$5,623,355.20 X$546,123.77)$ 164,073.35Gross profit per return294,720.91Overstatement$ 130,647.56*52 The petitioner's books at June 30, 1949 showed accounts receivable to be $486,984.46 and accounts payable after adjustment for refunds to be $488,830.99. The Commissioner determined that travel and entertainment expense in the fiscal year ended June 30, 1949 was overstated in the amount of $8,564 as the following expenditures were not substantiated as proper deductions: L. F.C. A.CashBradleyHunt7/ 1/48-12/31/4826 weeks at$50.00$1,300.009/10/48840.00$ 890.0011/ 4/48800.0011/ 8/48800.007/ 8/48$500.001/28/49550.00560.003/17/49861.00913.004/ 8/49100.004/29/49100.005/18/49350.00$850.00$4,451.00$3,263.00Total unaccounted for$8,564.00Ultimate Conclusions The petitioner has not shown that the Commissioner erred in disallowing travel and entertainment expense in the amount of $8,564 for the year ended June 30, 1949. The cash receipts and disbursements method of accounting followed by the petitioner clearly reflected its income for the taxable period. Opinion TIETJENS, Judge: The first issue in this case involves the propriety of the Commissioner's disallowance*53 of the sum of $8,564 for travel and entertainment expenses for the year ended June 30, 1949, as detailed in the findings of fact. The petitioner has failed to sustain its burden of proving error in the Commissioner's determination. As shown in the findings, the Commissioner disallowed certain specified items for lack of substantiation. Though statements of counsel would indicate that this amounted to a disallowance in toto of all claimed travel and entertainment expenses, we are unable to determine from the record whether or not this is so. The tax return does not segregate such expenses and the Commissioner's explanatory statement simply states such expenses were "overstated in the amount of $8,564.00." This would indicate that at least some travel and entertainment expenses had been allowed. Even so, the petitioner has come forward with nothing which would substantiate the disallowed expenditures except to produce testimony of a most general character. No documentary evidence at all was presented. The sum and substance of its proof was the testimony of Lillian Morrissey, a fair example of which follows: "Q Could you give us an example of some of the people or some of the occasions*54 in which it was necessary for you to spend substantial sums in entertainment and so on? "A Yes. "Q During the fiscal year ended June 30, '49? "A During that year we negotiated a leasehold, The Buotoni Foods Corporation. That happens to be a twenty year net lease. We also erected a building for Potters Brothers Glass Company. And Bergenfield Plaza store areas. Aeroil Products Company. "Q What was the last one? "A Aeroil. In the process of these leaseholds, the national companies come to us for a building. Mr. Giovanni Buotoni, the President of the company - you wanted names? "Q Yes, please names, wherever you can remember them. "A Mr. Cuneo, who is Vice-President of the Buotoni Foods, Inc. Mr. Potters, Potters Glass Company. Mr. Yarrington, of the Aeroil Products. How many do you want. I can go on and on." Her testimony does not mention where or on what dates any of these persons were entertained, the nature of the entertainment, or the amounts expended. There is no proof whatsoever pertaining to any one of the specified items disallowed. In the circumstances, we hold that the petitioner has failed to prove that the Commissioner erred in his determination. See Charles P. Noell, 21 B.T.A. 1107 (1931).*55 On the second issue, section 41 of the Internal Revenue Code of 1939 provides that as a general rule net income shall be computed in accordance with the method of accounting regularly employed in keeping the books of the taxpayer, but if the method does not clearly reflect the income, the computation shall be made in accordance with such method as in the opinion of the Commissioner does clearly reflect the income. The petitioner, a corporation with two stockholders, C. A. Hunt and Lillian Morrissey, was engaged in the construction business. It succeeded to the business previously conducted as a sole proprietorship by C. A. Hunt, which business was begun in 1934. Both the petitioner and its predecessor kept books and filed returns under the cash receipts and disbursements method of accounting. The petitioner maintained no inventories, purchasing materials for the various jobs as they were needed. The petitioner did not own heavy construction equipment, but rented such equipment when needed. The Commissioner determined that the cash receipts and disbursements method of accounting did not*56 properly reflect the petitioner's income and he therefore recomputed the petitioner's gross profit on contracts for the first two years of its existence. His method was as follows: the gross receipts reported for the years ended June 30, 1949 and 1950 and the accounts receivable outstanding at June 30, 1950 were added together; from this was subtracted the construction costs for the years ended June 30, 1949 and 1950 and the accounts payable at June 30, 1950; the remaining figure was the gross profit on contracts for the two years; this was allocated to each of those years in proportion to gross receipts. The basis of the Commissioner's argument that the cash receipts and disbursements method of accounting does not clearly reflect income revolves around the fact that during the years ended June 30, 1949 and 1950, the bulk of petitioner's work was the construction of three apartments and a shopping area for companies controlled by it and that large amounts due thereon during those years were not received or included in income until subsequent years although the expenses giving rise to those earnings were recorded during the years of construction. Thus, the Commissioner argues, there*57 was a clear distortion of income which is shown by the fact that for the year ended June 30, 1949, the petitioner reported a business loss of $24,125.56 when its gross income was $3,933,916.30 and for the year ended June 30, 1950 reported a business income of $189,362.49 when its gross receipts were only $1,501,831. After the Commissioner's adjustments of gross income the petitioner had business income of $219,569.58 and $58,714.93 for the years ended June 30, 1949 and 1950, respectively. 1We do not agree with the Commissioner's determination. The cash receipts and disbursements method of accounting used by the petitioner is generally recognized as a proper one. It must be accepted for the purpose of computing the tax unless it does not clearly reflect the income of the business. What was said in Osterloh v. Lucas, 37 Fed. (2d) 277 (C.A. 9, 1930), is appropriate here: "The case turns largely upon what is meant by the requirement that the method of accounting shall clearly reflect the income. If this requirement is absolute, it is safe to say that books kept on*58 the basis of cash received and disbursed will rarely, if ever, reflect the true income, because nearly always at the end of a tax year accounts due the taxpayer will remain uncollected and some of his own obligations will remain unpaid. But we do not think that any such literal construction was contemplated. In our opinion, all that is meant is that the books shall be kept fairly and honestly; and when so kept they reflect the true income of the taxpayer within the meaning of the law. In other words, the books are controlling, unless there has been an attempt of some sort to evade the tax. This construction may work to the disadvantage of the taxpayer or the government at times, but if followed out consistently and honestly year after year the result in the end will approximate equality as nearly as we can hope for in the administration of a revenue law." It is worthy of note that the petitioner's predecessor used the cash receipts and disbursements method of accounting in computing income so that there was a continuity of procedure when the petitioner also adopted that method. The fact*59 that the petitioner engaged principally in long-term construction contracts does not make its use of the cash receipts and disbursements method of accounting fatal. It has been recognized that income derived from long-term contracts is not required to be determined upon either the basis of percentage of completion or upon the completed contract basis but that it is permissible in proper cases that income derived from such contracts be determined upon the basis of the cash receipts and disbursements method of accounting. G.C.M. 22682, 1941-1 C.B. 307. The Commissioner made but one adjustment in revising total gross profit for the years ended June 30, 1949 and 1950, namely, accounts receivable and accounts payable at June 30, 1950 were taken into consideration. The revised gross profit figure for those two years was then divided between the years in proportion to cash receipts. The petitioner argues that this method does not more clearly reflect income than the cash receipts and disbursements method which it used. We agree. Had accounts receivable and accounts payable been considered*60 as of June 30, 1949, solely for the year then ended, the petitioner would have had a loss of $25,972.09 (which is $1,846.53 more than reported) for that period rather than income of $219,569.58 as the Commissioner determined under his method. 2 Further, had the petitioner used the completed contract method of accounting, its books indicate that although it would have had income of approximately $80,000 for the year ended June 30, 1949, it would also have had income of approximately $225,000 for the year ended June 30, 1950, during which year its cash receipts were less than half that of the previous year. This disparity between cash receipts and income was relied on by the Commissioner to show that the cash receipts and disbursements method of accounting did not clearly reflect petitioner's income. This reliance seems misplaced. The Commissioner recognizes that the completed contract method of accounting is a proper one for those engaged in long-term contracts. But, had that method been here employed, it also would have resulted in a disparity between cash receipts and income. Any distortion*61 in income which may have resulted from delayed payments on account by related companies for the Morrissey Hunt apartments and Bergenfield Plaza does not, standing alone, convince us that the cash receipts and disbursements method of accounting used by the petitioner did not clearly reflect its income. On cross examination, Lillian Morrissey testified that these delays in payment were due to the fact that the related companies did not have enough money to pay for projects in their entirety at the time of completion and that it would have been bad business to borrow for that purpose. We are convinced that the petitioner kept its books fairly, honestly, and in good faith under the cash receipts and disbursements method of accounting and without any attempt to evade taxes. We hold that it was proper for the petitioner to compute its income for the taxable period under the cash receipts and disbursements method of accounting, which is the basis on which the petitioner regularly computed its income in keeping its books. Since that method clearly reflected its income for those years, the Commissioner erred in computing income on an accrual method. Decision will be entered under Rule 50. *62 Footnotes1. Other adjustments made by the Commissioner are not reflected in these business income figures.↩2. Other adjustments made by the Commissioner are not reflected in these figures.↩